UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

HERBERT LEON MANAGO,

    Plaintiff,

v.                                    Case No. 3:23-cv-151-MMH-JBT

BENJAMIN SMITH, et al.,

    Defendants.

_____

# **ORDER**

## I. Status

Plaintiff Herbert Leon Manago, an inmate of the Florida Department of Corrections (FDOC), initiated this action by filing a pro se Civil Rights Complaint (Doc. 1) under 42 U.S.C. § 1983. He is proceeding on an Amended Complaint (Doc. 10; AC). Manago names seven Defendants: (1) Captain Benjamin Smith; (2) Officer London Boone; (3) Major Carter; (4) Sergeant Nichalson; (5) Sergeant Bryant; (6) Sergeant Benson; and (7) Officer Drewberry. Id. at 2. He raises claims of excessive force and failure to intervene.

This matter is before the Court on Defendants' Motion to Dismiss Complaint (Doc. 15; Motion), arguing that Manago failed to exhaust his administrative remedies. Manago filed a response to the Motion (Doc. 21;

Response), arguing that he did exhaust his administrative remedies. The Motion is ripe for review.

## II. Manago's Allegations[1]

Manago alleges that on September 8, 2022, Defendant Smith approached Manago's cell door and threatened to use chemical agents despite Manago's compliance with all FDOC rules of conduct. AC at 7. He asserts that a few hours later, Defendant Carter approached his cell and threatened to use chemical agents on Manago for no reason. Id. According to Manago, Carter then ordered Defendants Nichalson and Bryant to place Manago on property restriction. Id. Manago contends he complied with Nichalson and Bryant's requests for him to submit to restraints and a strip search. Id. Nichalson and Bryant then applied the restraints so tight that Manago's wrists and ankles were lacerated and bleeding. Id. They then removed all Manago's personal property from his cell, leaving Manago confined in only his underwear. Id.

About four hours later, Defendants Carter, Smith, Boone, Benson, and Drewberry approached Manago's cell and "manipulated the use of force camera to make it appear that there was a need for force" before Boone, following

---

[1] In considering Defendants' Motion, the Court must accept all factual allegations in the Amended Complaint as true, consider the allegations in the light most favorable to Manago, and accept all reasonable inferences that can be drawn from such allegations. Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003); Jackson v. Okaloosa Cnty., 21 F.3d 1531, 1534 (11th Cir. 1994). As such, the facts recited here are drawn from the Amended Complaint, and may well differ from those that ultimately can be proved.

Smith's orders, applied chemical agents into Manago's cell although Manago was not creating a disturbance. Id. at 8. After the application of chemical agents, Smith ordered Manago to submit to restraints for transport to a decontamination shower. Id. Manago complied with orders, and while Drewberry and Benson applied the restraints, they again lacerated Manago's wrists and ankles, causing more bleeding. Id.

Manago contends he took a decontamination shower before officials escorted him to medical for a post-use-of-force exam. Id. According to Manago, he complained to medical about his injuries, but medical declined to provide any treatment. Id. Following the exam, officers escorted Manago back to his cell, which was still contaminated with chemical agents. Id. He alleges Defendants then wrote false disciplinary reports against him to justify their conduct and use of force. Id. at 9. Because of Defendants' actions, Manago asserts he suffered "extreme elevated blood pressure," skin rashes, temporary vision loss, and lacerations on his wrists and ankles. Id. As relief, Manago seeks compensatory, nominal, and punitive damages. Id.

### III. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act (PLRA) requires Manago to exhaust his available administrative remedies before pursuing a § 1983 claim about prison conditions. See 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 . . . until such administrative

3

remedies as are available are exhausted."); see also Woodford v. Ngo, 548 U.S. 81, 92-93 (2006) (noting that a prisoner must exhaust administrative remedies before challenging the conditions of confinement, and concluding that the PLRA demands "proper exhaustion"). Nevertheless, Manago need not "specially plead or demonstrate exhaustion in [his] complaint[]." See Jones v. Bock, 549 U.S. 199, 216 (2007). Instead, the United States Supreme Court has recognized that "failure to exhaust is an affirmative defense under the PLRA[.]" Id.

Importantly, exhaustion of available administrative remedies is "a precondition to an adjudication on the merits." Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008); see also Jones, 549 U.S. at 211. The Supreme Court has instructed that while "the PLRA exhaustion requirement is not jurisdictional[,]" Woodford, 548 U.S. at 101, "exhaustion is mandatory . . . and unexhausted claims cannot be brought," Pavao v. Sims, 679 F. App'x 819, 823 (11th Cir. 2017) (per curiam) (citing Jones, 549 U.S. at 211).[2] Not only is there a recognized exhaustion requirement, "the PLRA . . . requires proper

---

[2] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060-61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

exhaustion" as set forth in applicable administrative rules and policies of the institution. Woodford, 548 U.S. at 93.

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)."

Id. at 90 (citation omitted). Indeed, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules[.]" Id.

Because failure to exhaust administrative remedies is an affirmative defense, Defendants bear "the burden of proving that [Manago] has failed to exhaust his available administrative remedies." Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008). The Eleventh Circuit has articulated a two-step process that the Court must employ when examining the issue of exhaustion of administrative remedies.

> In Turner v. Burnside we established a two-step process for resolving motions to dismiss prisoner lawsuits for failure to exhaust. 541 F.3d at 1082. First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true. The court should dismiss if the facts as stated by the prisoner show a failure to exhaust. Id. Second, if dismissal is not warranted on the prisoner's view of

5

> the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust. Id. at 1082-83; see also id. at 1082 (explaining that defendants bear the burden of showing a failure to exhaust).

Whatley v. Warden, Ware State Prison, 802 F.3d 1205, 1209 (11th Cir. 2015).

State law "determines what steps are required to exhaust." Dimanche v. Brown, 783 F.3d 1204, 1207 (11th Cir. 2015); see also Jones, 549 U.S. at 218 (stating that "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion"). The FDOC provides an internal grievance procedure for its inmates. See Fla. Admin. Code R. 33-103.001 through 33-103.018. Generally, to properly exhaust administrative remedies, a prisoner must complete a three-step sequential process. First, an inmate must submit an informal grievance at the institutional level to a designated staff member responsible for the specific problem. See Fla. Admin. Code R. 33-103.005. If the issue is not resolved, the inmate must submit a formal grievance at the institutional level. See Fla. Admin. Code R. 33-103.006. If the matter is not resolved through formal and informal grievances, the inmate must file an appeal to the Office of the FDOC Secretary. See Fla. Admin. Code R. 33-103.007.

Here, Defendants argue Manago failed to exhaust his administrative remedies because he did not complete the three-step grievance process for his

6

excessive force claim. Motion at 6. In support of this contention, Defendants attach a printout summary of Manago's grievance appeals, as well as a formal grievance (log # 2302-205-011), a grievance appeal (log # 23-6-06019), and the responses thereto. See Docs. 15-1, 15-2. In his Response, Manago argues he did exhaust his administrative remedies. In support of his argument, he attaches informal grievance (log # 215-2209-0094) and the institution's response approving that grievance. See Doc. 21-1.

Accepting Manago's view of the facts as true, the Court finds dismissal of the claims against Defendants for lack of exhaustion is not warranted at the first step of Turner. Thus, the Court proceeds to the second step of the two-part process and considers Defendants' arguments about exhaustion and makes findings of fact.

In doing so, the Court considers Defendants' argument that since September 2022, Manago has only pursued one issue through each step of the three-step grievance procedure and that issue was unrelated to the claims in this case. Motion at 2. According to Defendants, the only grievance appeal Manago has filed since September 2022 is grievance appeal (log # 23-6-06019), which contained allegations about "C.O. Tanner's" allegedly flawed disciplinary investigation and erroneous January 27, 2023, disciplinary report that Tanner issued in violation of Manago's due process rights. Motion at 6; see also Docs. 15-1, 15-2. They assert neither grievance appeal (log # 23-6-

7

06019) nor any other appeals contain allegations about the September 8, 2022, use of force or otherwise include the name of any Defendant. Motion at 2. As such, because Manago never sought a grievance appeal for his claims raised in this case, Defendants contend Manago failed to exhaust his administrative remedies. Id. at 6-7.

In his Response, Manago does not dispute that he never filed a grievance appeal concerning his allegations against Defendants. Response at 9. Instead, Manago argues that he did not need to file a grievance appeal because officials approved his informal grievance containing his allegations about Defendants' use of excessive force, rendering the filing of a formal grievance and grievance appeal unnecessary. Id. In support of this contention, Manago attaches informal grievance (log # 215-2209-0094), which states, in pertinent part:

> I would like to put F.D.O.C. on notice about my full intent to file a "1983" claim against Major Carter, Captain Arroye and many other officers and staff members. On 9-8-22 at or around 12:45-2:15 p.m., Major Carter unlawfully harmed and injur[]ed my person by the illegal use of chemical agents and the removal of all my personal property as well as my health and comfort items. His actions were in direct violation of the Ch. 33 F.A.C. Likewise, Captain Arroyo on 9-9-22 at 2:10-2:15 am followed his supervisor in his oppressive conduct against my person by harming and injur[]ing me with the use of unlawful chemical agents, in direct violation of Ch. 33 F.A.C. Based on the above information my 1st, 4th, 5th, 6th, 8th, and 14th constitutional rights have been violated beyond repair. . . . This grievance was wrote to establish my administrative remedy.

8

Doc. 21-1 at 3. Grievance officials approved informal grievance (log # 215-2209-0094), stating:

> Your grievance has been received, reviewed and evaluated.
>
> Your complaint has been documented and reported. You may consider the grievance process approved. However this does not substantiate your claims. Further disposition rest[s] with the I.G.'s Office.

Doc. 21-1 at 3.

Defendants do not dispute that Manago filed this informal grievance about the use of excessive force, nor do they dispute that the informal grievance was approved and referred to the Office of the Inspector General for further investigation. To that end, the Court must accept Manago's unrefuted allegation that once the FDOC referred his informal grievance to the Inspector General's Office, he was not required to pursue subsequent stages of the administrative grievance process or wait for the conclusion of the Inspector General's investigation before filing this action. See, e.g., Dombrowski v. Wilson, No. 3:21-cv-1199-BJD-PDB, 2023 WL 2403857, at *3 (M.D. Fla. Mar. 8, 2023) (finding that the plaintiff exhausted his administrative remedies because his informal grievances were approved); see also Tierney v. Hattaway,

9

No. 3:20-cv-5738-LAC-ZCB, 2022 WL 18159995, at *2 (N.D. Fla. Dec. 9, 2022)[3] ("Given that [the plaintiff's] informal grievance was 'approved,' and the matter referred to the [OIG], it would have been pointless for [him] to appeal by filing a formal grievance."). As such, the Motion is due to be denied.

Accordingly, it is

**ORDERED:**

1. Defendants Motion to Dismiss (Doc. 15) is **DENIED**.

2. Defendants shall file an answer to the Amended Complaint (Doc. 10) by **May 15, 2024**.

3. The Court will issue a separate order setting case management deadlines.

**DONE AND ORDERED** at Jacksonville, Florida, this 23rd day of April, 2024.

MARCIA MORALES HOWARD
United States District Judge

---

[3] The Court notes that although decisions of other district courts are not binding, they may be cited as persuasive authority. See Stone v. First Union Corp., 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects.").

Jax-7
C: Herbert Leon Manago, # 1134180
    Counsel of record

11